## Huber's Petition

*Fox & McTighe*, for petitioner.
*High, Dettra & Swartz*, for respondent.

KNIGHT, P. J., May 26, 1943.—The parties have agreed to the following facts:

1. On April 30, 1941, premises known as 47 Levering Mill Road, Lower Merion Township, Montgomery County, Pa., were sold at sheriff's sale for $13,000 to Warren B. Light, and thereafter settlement was duly made with the sheriff.

2. On September 2, 1941, the said sheriff's deed, dated August 18, 1941, was recorded in the Office of the Recorder of Deeds of Montgomery County in deed book no. 1321, p. 391.

3. On September 3, 1941, the property was conveyed by Warren B. Light to Joel Cook Huber and Mary Hays Huber by deed recorded in the Office of the Recorder of Deeds of Montgomery County in deed book no. 1417, p. 364.

4. At the time of the sheriff's sale, on April 30, 1941, there was no tax bill lodged with the sheriff for 1941 taxes, and the sheriff's schedule of distribution shows the following:

| | |
|---|---|
| Costs ........................ | $243.88 |
| 1941 sewer rent ............... | 19.95 |
| To writ ....................... | 12,736.17 |
| | $13,000.00 |

5. On May 4, 1942, there was filed with the Treasurer of Montgomery County a tax lien for 1941 against the property, in the name of Charles Frizell, Jr., and Phyllis Frizell, which lien is docketed in the Treasurer's Tax Lien Docket, 1941, no. 4, p. 73. The lien included the following taxes:

| | |
|---|---|
| School ......................... | $132.76 |
| Township ....................... | 80.56 |
| County ......................... | 14.96 |
| Institution .................... | 9.98 |
| Total........................... | $238.26 |

6. The 1941 school taxes were levied on May 19, 1941, the tax rate having been fixed by the school board

at its meeting on May 19, 1941, at which meeting the school tax rate for the year 1941 was fixed at 13 mills.

7. The above lien includes penalties to the date of filing, and interest accrues at the rate of one half per cent a month from May 4, 1942, until paid.

8. On August 18, 1941, the sheriff's schedule of distribution was filed, and on September 5, 1941, distribution was made by the sheriff in accordance with the schedule of distribution.

9. The claim for the 1941 school taxes was not made with the sheriff either before the sheriff's sale or before the time of the sheriff's distribution, although the 1941 school taxes were levied and assessed against the real estate prior to the distribution by the sheriff.

10. The School District of Lower Merion Township is a school district of the second class under the laws of Pennsylvania.

11. At the time of the sheriff's sale the real owners of the property were Charles E. Frizell, Jr., and Phyllis P. Frizell.

12. Warren B. Light, the purchaser at the sheriff's sale, was the straw man for petitioners, Joel Cook Huber and Mary Hays Huber, and on September 3, 1941, when Warren B. Light conveyed the premises to petitioners, Joel Cook Huber and Mary Hays Huber, the conveyance was without any consideration.

Only the School District of the Township of Lower Merion has filed an answer to the rule, and no facts have been stipulated by the parties in reference to the lien for township and county taxes. We understand from counsel that the township and county concede that their taxes for 1941 were discharged by the sheriff's sale, and as to these taxes the rule should be made absolute.

The School Code of May 18, 1911, P. L. 309, sec. 537, as amended, provides that in school districts of the second class school taxes shall be levied and assessed by

the board of school directors during the month of April or May of each year, for the ensuing fiscal year. The Act of May 16, 1923, P. L. 207, provides that when such taxes are lawfully imposed and assessed they shall be a first lien on the real estate so assessed and shall be paid prior to all liens and charges, save costs, from the proceeds of any sheriff's sale of the real estate subject to the tax.

The Act of May 22, 1895, P. L. 111, provides:

"Section 1. Be it enacted, &c., That the lien of all taxes now or hereafter to be levied or assessed against any real estate within this Commonwealth shall be divested by any judicial sale of such land: Provided, The amount of the purchase money shall equal the amount of the said taxes.

"Section 2. That it is hereby made the duty of any officer having taxes for collection against any land advertised to be sold, or of the county commissioners before the taxes have been certified for collection, to give notice to the officers or person selling any such land of the amount of taxes against the same, and the officer selling such land shall pay said taxes out of the proceeds arising from the sale first after payment of the costs of sale."

The school tax for the year 1941 became a lien on the property herein described on the day that the school tax was assessed and levied by the School Board of Lower Merion Township, to wit, May 19, 1941: Petition of Adam Scheidt Brewing Company, 54 Montg. 414 (1938). Taxes levied and assessed before the date of a sheriff's sale of the property, on which the amount bid is sufficient to pay the costs and taxes, cannot be recovered by a lien on the property sold: Fame B. & L. Assn. v. Graber et ux., 25 D. & C. 59 (1935).

The question before us, then, is whether the Act of 1895, supra, applies to taxes assessed and levied after a sheriff's sale but before distribution is made by the sheriff, in cases where no demand has been made upon the sheriff for payment.

The industry of counsel, and our own research, have failed to disclose one reported case in which this question has been considered. In all the cases cited by both sides the taxes involved were levied and assessed before the sale by the sheriff. The Act of 1895, supra, deals with the *lien* of taxes after they are levied and assessed. It provides that the *lien* of taxes will be divested by a judicial *sale* if the proceeds above the costs of the sale are sufficient to pay the tax. Here the school tax was not levied or assessed and, therefore, was not a lien on the premises, when the same were sold by the sheriff. To adopt the contention of petitioners would mean that the owner of premises sold at judicial sale would have to pay taxes which were not due and payable when the premises were sold. If the owner did not have to pay such taxes, the holders of encumbrances would. This would be unjust. The Act of 1895, in effect, transfers the lien of taxes from the land to the proceeds of the sale of the land. To allow taxes not levied or assessed, and hence not due and payable at the time of the judicial sale, to be collected from the proceeds would be to create a lien upon funds that were not taxable as real estate.

We repeat: The Act of 1895 divests the *lien* of taxes and not all *claims* for taxes.

Judicial sales are usually held at stated times and are widely advertised. Those charged with the collection of taxes have notice that all taxes assessed and levied before the sale will be discharged by the sale, if the proceeds are sufficient to cover the costs and the amount of the tax, and they can collect the taxes by notifying the sheriff of their liens.

On the other hand, no public notice is given of the time when the sheriff makes distribution, and this may take place weeks, often months, and sometimes years, after the sale. If taxes levied and assessed after the sale may be collected from the proceeds, or lost if they are not so collected, it would work a great injustice

upon the unfortunate owners whose land was sold at the judicial sale, and upon those holding encumbrances upon the land; it would cause loss to the public and create uncertainty and confusion in the collection of taxes. We do not believe the legislature ever intended the Act of 1895 to have such effect, nor do we think the act supports any such interpretation. As we view it, the fact that the tax collector gave no notice of the school tax to the sheriff has no bearing on the case.

We are all of the opinion that the lien of the school tax for 1941, on the premises described in the petition, was not discharged by the sheriff's sale of April 30, 1941.

And now, May 26, 1943, the rule, so far as it applies to the township, county, and institution district taxes, is made absolute, and the lien of these taxes is stricken off. The rule, so far as it applies to the school tax, is discharged.